IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | Case No. 1:26-cr-20 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Austin Fowler, | : | Order Denying Defendant's Motion to |
| | : | Suppress |
| Defendant. | : | |

Defendant Austin Fowler moves this Court to suppress evidence he argues was obtained in violation of his Fourth Amendment rights.[1]  For the reasons that follow, Fowler's Motion (Doc. 18) will be **DENIED**.

## I.      BACKGROUND[2]

Fowler was arrested on November 18, 2025 in downtown Cincinnati after what was intended as an investigatory stop for jaywalking led to a brief police chase and culminated in Fowler being tased and arrested for obstruction of justice.  (Transcript, Doc. 20 at PageID 73–81.)  Upon searching Fowler incident to arrest, officers discovered that that he was in possession of a firearm, which led to the federal charge in this case.  (*Id*. at PageID 86–87.)  On March 5, 2026, Fowler was indicted on one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  (Doc. 3.)  On May 1, 2026, Fowler filed the pending Motion to Suppress, and on May 8, 2026, the Government responded in opposition.  (Docs. 18, 19.)  On

---

[1] Fowler also moved to suppress statements made to law enforcement officers in violation of his Fifth, Sixth, and Fourteenth Amendment rights.  (Doc. 18 at PageID 51–52.)  His attorney withdrew this portion of his Motion at the June 23, 2026 hearing.  (Doc. 20 at PageID 111.)
[2] The facts of the case are taken from the testimony and exhibits presented at the hearing on the Motion to Suppress on June 23, 2026.

June 23, 2026, the Court held an evidentiary hearing, at which Fowler, his attorney, and the Government appeared.  (June 23, 2026 Minute Entry.)

At the hearing, the Government called Cincinnati Police Officer, Nicholas Treinen, as its witness.[3]  Officer Treinen testified that on the evening of November 18, 2025, he was assigned to work an overtime shift for the Street Crimes Task Force, which is focused on increasing police visibility in the downtown Cincinnati area.  (*Id*. at PageID 74.)  Officer Treinen is an officer for District 4, Violent Crime Squad in Cincinnati and is also a member of the Street Crimes Task Force, which is focused on reducing the number of break-ins and shootings in Cincinnati.  (*Id*. at 71, 73–74.)

The evening of Fowler's arrest, Officer Treinen was patrolling in a police cruiser and observed a male individual, who was not Fowler, with his left hand in his pocket turning away as officers patrolled, which indicated that he may be attempting to conceal a firearm.  (*Id*. at PageID 76–77.)  This individual was located near Green Street and Republic Street, which was known for drug trafficking activity and its homeless population.  (*Id*.)  Officer Treinen radioed in the information to plainclothes officers who observed the individual commit a pedestrian violation. (*Id*. at PageID 77.)  Officer Treinen and the other officer on cruiser patrol therefore initiated a stop of the individual for jaywalking.  (*Id*.)  Officer Treinen's body-worn camera captured the events from this point forward.  (Exhibit B.)  Officer Treinen pulled over near Green Street and Republic Street to investigate the individual's jaywalking.  (Exhibit B at 21:42:14–16; Doc. 20 at PageID 77.)  That individual cooperated with speaking with police.  (Exhibit B at 21:42:14–16.)

---

[3] Fowler's attorney had the opportunity to cross-examine Officer Treinen at the hearing.  The Court observed Officer Treinen's responses and demeanor while testifying and found him to be credible.  The following Exhibits were entered into evidence at the hearing: Government Exhibit A, a Google street view of the intersection of Green St. and Republic St. in Cincinnati, Ohio;  Government Exhibit B, Officer Treinen's body worn camera footage from the night of Fowler's arrest; Government Exhibit C, a mobile video recording from the back of the cruiser transporting Fowler; Government Exhibit D, the Cincinnati Municipal Code § 506-47 (Pedestrians to Use Sidewalks); and Defense Exhibit 1, Cincinnati Municipal Code § 506-46 (Pedestrians Crossing Highway).

Fowler, however, who was with the individual under investigation, began walking away and distancing himself from police officers.  (Exhibit B at 21:42:06–16; Doc. 20 at PageID 78.)  Officers asked Fowler why he was walking away and if he had warrants, but Fowler did not answer.  (Exhibit B at 21:42:06–16; Doc. 20 at PageID 78.)  Fowler continued walking away, entered the roadway of Republic Street, walked down the middle of Republic Street, and crossed the street at a diagonal angle.  (Exhibit B at 21:42:07–16; Exhibit A; Doc. 20 at PageID 102.)  There are sidewalks on either side of Republic Street, but Fowler walked in the middle of the roadway.  (Exhibit B at 21:42:07–16.)

As Fowler was walking away, Officer Treinen yelled, "hey sir, sir, come here, you're in the street now."  (*Id*. at PageID 21:42:14–15.)  Fowler ignored Officer Treinen's command and continued walking in Republic Street.  (*Id*. 21:42:15.)  Officer Treinen repeated the command, yelling, "OK, come here, you're in the middle of the street, get over here now!"  (*Id*. at PageID 21:42:17–22.)  Fowler ignored the command and began walking faster, nearly running.  (*Id*. at 21:42:22–26.)  Officer Treinen warned Fowler, "you want to get tased?"  (*Id*. at 21:42:25–26.)  Fowler began running and tried to jump a rod iron fence to flee into an alley.  (*Id*. at 21:42:29–30.)  Officer Treinen tased Fowler, who kept running.  (*Id*. at 21:42:30–36.)  Officer Treinen caught Fowler in a short foot pursuit and attempted to handcuff him, but Fowler resisted and refused to put his hands behind his back.  (*Id*. at PageID 21:42:36–59.)  Officer Treinen repeatedly yelled at Fowler for him to put his hands behind his back and tased Fowler when he did not comply.  (*Id*.)  Fowler complied when Officer Treinen yelled, "give me your other hand!" (*Id*. at 21:43:00–04.)  Officer Treinen then placed Fowler's other hand in handcuffs.  (*Id*. at 21:43:08–17.)

Officer Treinen testified that Fowler was walking in the middle of Republic Street when there was a readily accessible sidewalk on either side, which was in violation of Cincinnati Municipal Code § 506-47.  (Doc. 20 at PageID 80–81.)  He also testified that Fowler did not cross Republic Street at a right angle but instead at a diagonal.  (*Id*. at PageID 86; 102.)  When Fowler refused to stop, Officer Treinen believed that Fowler's conduct violated Ohio Revised Code § 2921.31, obstructing official business, because it hampered his ability to investigate the jaywalking offense.  (*Id*.)

After Fowler was arrested, Officer Treinen searched Fowler and recovered a firearm from his jacket.  (Exhibit B at PageID 21:44:02–45:47.)  While searching, officers asked Fowler if he had anything on him, which he denied.  (*Id*.)  Fowler was placed in the back of a police cruiser, where he was advised of his *Miranda*[4] rights.  (Cruiser Camera, Exhibit C at 21:55:42–56:08.)  After being read his rights, Fowler admitted that he ran because he was not allowed to possess firearms.  (*Id*. at PageID 21:56:15–40)  When asked if he had been caught with a gun before, Fowler responded, "a long time ago."  (*Id*. at PageID 21:56:40.)

## II.     LAW AND ANALYSIS

This case is remarkably similar to a case that recently came before the Honorable Douglas R. Cole in which a defendant was observed jaywalking in violation of Cincinnati Municipal Code § 506-46, ignored officers' instruction to stop, attempted to flee into a house, and was tased, handcuffed, and arrested for obstructing official business.  *United States v. Sparks*, No. 1:24-cr-85, 2025 WL 1099361, at *2, *5 (S.D. Ohio April 9, 2025).  The Court found that the officers engaged in a valid investigative *Terry*[5] stop of jaywalking.  *Id*.  Because the defendant resisted arrest by disobeying the officers' commands and attempting to flee,

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[5] *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

officers had probable cause to tase and formally arrest him for obstructing official business. *Id*. at \*7, \*8. Guided by this precedent squarely on point, the Court reaches the same conclusion as did Judge Cole in *Sparks* that the Defendant's Motion to Suppress should be denied.

### A. *Terry* Stop

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. Courts suppress "evidence obtained in violation of the Fourth Amendment" and disallow its use "in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). "In most cases, Fourth Amendment rights are 'preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer.'" *Sparks*, 2025 WL 1099361, at \*5 (quoting *California v. Carney*, 471 U.S. 386, 390 (1985)).

One exception to this rule is a *Terry* stop, which is when an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Id*. (citing *Terry v. Ohio*, 392 U.S. at 30). To conduct a *Terry* stop, an officer must have "reasonable suspicion" of a crime, meaning "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the continued detention." *United States v. Moberly*, 861 F. App'x 27, 29 (6th Cir. 2021) (citations omitted). Whether an officer has reasonable suspicion is based upon the "totality of the circumstances," including "all the information and experience available to the police officer at the time of the stop." *Sparks*, 2025 WL 1099361, at \*5 (citing *United States v. Abdi*, 827 F. App'x 499, 504 (6th Cir. 2020)).

Officer Treinen had reasonable suspicion to conduct a *Terry* stop. He observed Fowler walking in the middle of Republic Street, which had sidewalks on either side. (Exhibit B,

5

21:42:15.) He also observed Fowler cross the street at a diagonal, not 90-degree, angle. (Doc. 20 at PageID 102.) As Fowler's attorney pointed out, there was no crosswalk. (*Id*. at PageID 90–91.) Nonetheless, the way Fowler crossed the street constituted jaywalking because he walked down the roadway, rather than on the sidewalks, and crossed at a diagonal. *See* Cincinnati Mun. Code §§ 506-46, 506-47. Given jaywalking is a misdemeanor offense, *see id*. § 512-1, under *Terry*, Officer Treinen could validly stop Fowler to issue a citation. *See Sparks*, 2025 WL 1099361, at \*5 (citing *State v. Moorer*, 23 N.E.3d 173, 177–78 (Ohio Ct. App. 2014)). Because Fowler failed to comply with Officer Treinen's lawful orders to stop, however, what was intended as a *Terry* stop grew into probable cause to arrest, as is discussed next.

### B. Arrest and Search

Officer Treinen was unable to effectuate a *Terry* stop, because Fowler fled and ignored his commands to stop. (Exhibit B, 21:42:29–30.) There are times when an investigatory *Terry* stop evolves into an arrest and search, which is what occurred in this case. When that is the case, the government must separately justify the arrest, which requires probable cause to be lawful. *Smith v. City of Wyoming*, 821 F.3d 697, 714–15 (6th Cir. 2016), *as amended* (May 18, 2016). While a minor misdemeanor such as jaywalking does not give rise to the power to arrest, obstructing official business does. *Sparks*, 2025 WL 1099361, at \*7; *see also Cockrell v. City of Cincinnati*, 468 F. App'x 491, 492 n.2 (6th Cir. 2012) ("Jaywalking is a minor misdemeanor, which does not normally justify custodial arrest.") "Probable cause, which is also based on the totality of the circumstances, exists 'where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that the suspect committed, is committing, or is about to commit an offense.'" *Sparks*, 2025 WL 1099361, at \*7 (citing *Smith*, 821 F.3d at 714–15) (cleaned up).

6

To establish a violation of Ohio Rev. Code § 2921.31, the Government must establish: "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without a privilege to do so." *Sparks*, 2025 WL 1099361, at *7 (citing *State v. Henry*, 110 N.E.3d 103, 116 (Ohio Ct. App. 2018) (citation omitted)).  The first element requires "proof of an affirmative act."  *Id*. (citing *Henry*, 110 N.E.3d at 116.)

All five elements of obstructing official business are met here.  As to the first, Fowler ignored Officer Treinen's commands to stop and fled by picking up speed and attempting to jump over a gate, which constitutes an affirmative act.  *Id*. at *8.  As to the second, Fowler acted with purpose, as demonstrated by his running, refusing to give his hands to Officer Treinen, and attempting to jump over a gate.   With respect to the third element, refusing to comply or stop impeded Officer Treinen's ability to investigate Fowler's jaywalking.  Fourth, Officer Treinen was engaged in his lawful patrol duty at the time of the incident.  Finally, fifth, Fowler presented no evidence demonstrating that he acted with privilege to justify his failure to comply.  With all five elements met, Officer Treinen had probable cause to arrest Fowler for obstructing official business under Ohio law.[6]  As such, Fowler's arrest was lawful, and there was no Fourth Amendment violation.

### III.    CONCLUSION

Fowler was lawfully arrested and searched in this case, as set forth above.  Defendant's Motion to Suppress (Doc. 18) is, therefore, **DENIED**.

**IT IS SO ORDERED**.

---

[6] Officers lawfully searched Fowler incident to arrest.  *See Sparks*, 2025 WL 1099361, at *8 (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973) (officers can search an arrestee's person incident to lawful custodial arrest)).

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

8